**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Joseph O'Keeffe<br>5755 Covington Meadows Drive<br>Westerville, Ohio 43082<br><br>       Plaintiff,<br><br>vs.<br><br>Cenlar Agency, Inc., AKA Cenlar FSB<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>       Defendant. | Judge:<br><br>Case No: 2:22-cv-4070<br><br><br><br>**JURY DEMAND ENDORSED HEREIN** |

**COMPLAINT FOR MONEY DAMAGES**

The following allegations are based upon Plaintiff Joseph O'Keeffe's ("Mr. O'Keeffe") personal knowledge, the investigation of counsel, and information and belief.  Plaintiff, through counsel, alleges as follows:

**I. INTRODUCTION**

1. Cenlar failed in its duties as servicer from the outset of the loan modification process.  Mr. O'Keeffe entered into a loan modification with Defendant Cenlar Agency, Inc., ("Defendant" or "Cenlar") in March of 2021.  The loan modification would become effective upon satisfactory completion of a Trial Payment Plan ("TPP").  Mr. O'Keeffe successfully completed the TPP and received loan modification documents, however, the documents misspelled his wife's name.  Mr. O'Keeffe continued to make timely monthly payments under the TPP until Defendant provided corrected documents.  Defendant eventually provided documents with the corrected spelling.  Mr. O'Keeffe executed the documents

before returning them to Defendant. Defendant executed the documents and returned them to Mr. O'Keeffe. Despite its signing of the documents, Defendant failed to update the terms of the modification into its system. Defendant sent Mr. O'Keeffe inaccurate mortgage statements and held his monthly payments in a suspense account. Mr. O'Keeffe continually called Defendant and requested it remedy the issue, even reaching out to the Office of the Comptroller of Currency in an attempt to have Defendant correct its error. In the interim, Defendant recorded the loan modification agreement with the Delaware County Recorder. Despite this recording, Defendant sent Mr. O'Keeffe a new loan modification package that it required he sign. Since the modification was already signed and recorded, Mr. O'Keeffe did not sign the new documents. Defendant responded by refusing Mr. O'Keeffe any loan modification, refused to take his monthly payments, and falsely attempted to assert that he was in default. Mr. O'Keeffe sought out counsel to send a qualified written request to Defendant pursuant to RESPA. Defendant has failed to adequately respond to such correspondence and engaged in additional misconduct by filing a fraudulent foreclosure complaint in violation of RESPA.

## II. PRELIMINARY STATEMENT

2. Plaintiff institutes this action for actual damages, statutory damages, attorney fees, and the costs of this action against Defendant for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* and Regulation X, 12 C.F.R. § 1024.

## III. JURISDICTION

3. This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

4. This Court has subject matter jurisdiction over Count Two under RESPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

5. The Court has personal jurisdiction over Defendant because Defendant transacts business within this District, the loan at issue was incurred within this District, and the property which was the subject of the loan at issue is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

6. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and the property is located in this judicial district.

**IV. PARTIES**

7. Plaintiff is a natural person currently residing within this Court's jurisdiction at 5755 Covington Meadows Drive, Westerville, Ohio 43082.

8. At all relevant times, Plaintiff was and is a "person" within the meaning of RESPA at 12 U.S.C. § 2602(5).

9. At all relevant times, Plaintiff was and is a "borrower" within the meaning of RESPA.

10. Defendant is a company organized under the laws of the United States of America with its principal place of business in Delaware.

11. At all relevant times, Defendant was and is a "person" within the meaning of RESPA, 12 U.S.C. § 2602(5).

12. At all relevant times, Defendant was and is a loan "servicer" of Plaintiff's "federally related mortgage loan" within the meaning of those terms in RESPA respectfully at 12 U.S.C. §§ 2605(i)(2) and 2602(1).

13. At all relevant times, Defendant was engaged in "servicing" within the meaning of RESPA, 12 U.S.C. § 2605(i)(3).

## V. FACTUAL ALLEGATIONS

14. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

15. Each action or inaction alleged herein against Defendant is also an allegation of action or inaction by Defendant's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

16. On or about December 16, 2003, Mr. O'Keeffe financed the residential real property located at 5755 Covington Meadows Drive, Westerville, Ohio 43082 with a note secured by a mortgage (collectively the "Mortgage Loan").

17. In early 2021, Mr. O'Keeffe applied for a modification of the Mortgage Loan.

18. On or about March 26, 2021, Defendant approved Mr. O'Keeffe for a TPP as a precursor to a permanent loan modification.

19. If Mr. O'Keeffe successfully completed the TPP by making three required payments in the amount of $1,852.43, the loan modification would become effective.

20. On or about July 7, 2021, Defendant notified Mr. O'Keeffe that he had successfully completed the TPP.

21. Defendant instructed Mr. O'Keeffe to continue making payments in the amount of $1,852.43 until the loan modification was finalized.

22. Mr. O'Keeffe continued to make timely payments under the loan.

23. On or about July 29, 2021, Defendant provided loan modification documents for Mr. O'Keeffe to sign, however, failed to properly spell his wife's name.

24. The loan modification offer included a modified principal balance of $120,108.42 with a fixed interest rate of 3.5% and a monthly payment of $1,230.18.

25. Mr. O'Keeffe intended to accept Defendant's offer.

26. However, Mr. O'Keeffe was unable to execute the documents before a notary due to the misspelling of his wife's name.

27. Mr. O'Keeffe called Defendant to inform it of the spelling error immediately after the notary rejected the documents and requested new documents.

28. Mr. O'Keeffe additionally requested Defendant provide a 1099-C reflecting the portion of the cancelled debt.

29. Defendant informed Mr. O'Keeffe that both of his requests would be honored.

30. Defendant requested Mr. O'Keeffe continue to make monthly payments in the interim.

31. Mr. O'Keeffe made all payments in a timely manner while awaiting corrected loan modification documents.

32. On or about October 27, 2021, Defendant provided Mr. O'Keeffe with properly spelled loan modification documents ("The Loan Modification").

33. On that same date, Mr. O'Keeffe executed and returned the documents to Defendant.

34. Defendant did not forward the documents to its modification processing center until November 2, 2021.

35. As a result of this delay, Defendant initially denied Mr. O'Keeffe the Loan Modification it had just offered.

36. On or about November 3, 2021, Mr. O'Keeffe filed a complaint with the Office of the Comptroller of Currency ("OCC").

37. On or about November 9, 2021, Defendant reversed its denial of Mr. O'Keeffe's Loan Modification.

38. On or about November 19, 2021, Felice Jones, the Vice President of Document execution, signed the Loan Modification on behalf of Defendant.

39. On or about November 23, 2021, Defendant sent Mr. O'Keeffe a signed copy of the agreement.

40. Despite agreeing to the Loan Modification, Defendant failed to properly update the loan information in its system.

41. Defendant continued to send Mr. O'Keeffe monthly mortgage statements bearing the previous principal balance, interest rate, and monthly payment.

42. Defendant also began to hold Mr. O'Keeffe's monthly payments in a suspense account.

43. On or about December 1, 2021, Defendant sent a letter to the OCC admitting that it had made errors when inputting the Loan Modification into its system and that it would take steps to correct those errors.

44. Mr. O'Keeffe continually called Defendant throughout December 2021 in futile attempts to correct the issue.

45. Defendant transferred Mr. O'Keeffe from department to department over the phone all while failing to provide answers at any point.

46. It appeared that Defendant had no idea what happened with Mr. O'Keeffe's Loan Modification.

47. Mr. O'Keeffe continued to call Defendant to inquire as to the status of his Loan Modification throughout January 2022.

48. At no point did Defendant offer an explanation to Mr. O'Keeffe.

49. On or about January 11, 2022, Defendant recorded the Loan Modification agreement with the Delaware County Recorder.

50. Defendant recorded the agreement at the same time it was refusing to accept Mr. O'Keeffe's monthly payments in the amount specified by the Loan Modification.

51. At this point, Defendant accepted payments from Mr. O'Keeffe, however, Defendant applied these payments pursuant to the previous schedule.

52. Despite recording the Loan Modification, Defendant continued to send Mr. O'Keeffe monthly statements bearing inaccurate principal balances, interest rates, and monthly payment amounts.

53. Nevertheless, Mr. O'Keeffe continued to make timely payments under the Loan Modification.

54. During this time, unbeknownst to Mr. O'Keeffe, Defendant's system was requiring a higher monthly payment.

55. Defendant's failure to properly update its system resulted in improper charges and fees being levied against Mr. O'Keeffe's account.

56. On or about February 10, 2022, Defendant sent Mr. O'Keeffe a new permanent loan modification package.

57. The terms of this new package were significantly different from the agreed upon and recorded Loan Modification.

58. The new package contained a modified principal balance of $213,369.76 with a fixed annual interest rate of 3.65%.

59. Defendant did not communicate in any way to Mr. O'Keeffe that new modification paperwork would be forthcoming.

60. Mr. O'Keeffe had no idea why Defendant had sent a new modification agreement.

61. Mr. O'Keeffe did not sign or execute these new documents.

62. On or around March 21, 2022, Defendant sent Mr. O'Keeffe a letter stating that he was "ineligible" for a loan modification.

63. Defendant attempted to support this finding with a statement made by Mr. O'Keeffe that he was declining the offer and was not interested in loss mitigation.

64. Mr. O'Keeffe never made any such statement.

65. Mr. O'Keeffe previously accepted Defendant's offer on or about October 27, 2021.

66. Mr. O'Keeffe attempted to explain the error to Defendant, who refused to take corrective action.

67. On or about March 22, 2022, Defendant sent Mr. O'Keeffe a notice that he was in default under the terms of his Note and Mortgage.

68. On or around March 28, 2022, Mr. O'Keeffe responded to Defendant's notice with a letter highlighting the numerous errors Defendant had made with respect to the modification.

69. Beginning in April of 2022, Defendant fully refused to accept monthly payments from Mr. O'Keeffe.

70. Defendant attempted to support this refusal by falsely stating that Mr. O'Keeffe had defaulted on the terms of his mortgage.

71. Mr. O'Keeffe paid, or made offers to pay, all monthly obligations as they came due.

72. Out of options, Mr. O'Keeffe retained counsel to send a qualified written request ("QWR") pursuant to the Real Estate Settlement and Procedures Act ("RESPA").

73. On or around August 1, 2022, Mr. O'Keeffe, through counsel, sent a QWR containing notices of error and requesting certain information.

74. The QWR officially notified Defendant of errors related to the Loan, including but not limited to the following:

    a. Failing to adjust the terms of the account to reflect the agreed upon Modification

    b. Improper refusal to accept monthly payments

    c. Improper fees and/or charges assessed to the account.

75. The QWR also requested Defendant provide information, including but not limited to, the following:

    a. All telephone call logs, recording, and servicer notes regarding communications with Mr. O'Keeffe from March 2021 to the present

    b. All correspondence you provided Mr. O'Keeffe from January 2021 to the present

    c. All documents from January 2021 to the present related to the modification, or any other loss mitigation options, including but limited to all agreements, offers, internal notes, emails, and communications regarding the same.

76. Mr. O'Keeffe incurred legal fees and costs associated with preparing and mailing the QWR.

77. On or about September 9, 2022, Defendant responded to the QWR.

78. Defendant attempted to explain the discrepancy regarding the interest rate, although inadequately, but failed completely to mention the difference in outstanding principal balance.

79. Defendant failed to adequately explain why it had refused to accept Mr. O'Keeffe's monthly payments.

80. Defendant also failed to adequately explain the fees and charges to the account.

81. Defendant failed to properly respond to the Requests for Information.

82. Defendant failed to produce documents in its possession which firmly relate to the loan modification process.

83. Defendant completely avoided the specific request for call logs.

84. Defendant completely avoided the specific request for internal notes.

85. Defendant failed to fully respond to any of the requests for information.

86. While Mr. O'Keeffe was reviewing Defendant's response with counsel, Defendant, through its parent Citi Mortgage, filed a fraudulent foreclosure Complaint against Mr. O'Keeffe on or around October 13, 2022.

87. This foreclosure Complaint lacked any merit, as Mr. O'Keeffe had never defaulted on the terms of his mortgage.

88. Defendant fabricated a breach for nonpayment by refusing to accept payments after spending months improperly applying Mr. O'Keeffe's payments.

89. Mr. O'Keeffe reinstated the loan immediately after the foreclosure Complaint was filed.

90. Mr. O'Keeffe paid this amount under duress.

91. Defendant voluntarily dismissed the improperly filed Complaint within a week of its filing.

92. Defendant's filing of the foreclosure Complaint had an adverse effect on Mr. O'Keeffe's employment.

93. As a direct and proximate result of Defendant's actions, Plaintiff incurred legal fees and costs associated with preparing and mailing the QWR.

94. As a direct and proximate result of Defendant's actions, Plaintiff incurred legal fees and costs associated with defending against the fraudulent foreclosure.

95. As a result of Defendant's actions, Plaintiff suffers severe emotional distress, including anxiety, stress, and sleepless nights.

96. As a result of Defendant's actions, Plaintiff incurred the legal fees and expenses of bringing this lawsuit.

## VI. FIRST COUNT – RESPA QWR VIOLATIONS

97. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

98. Defendant's actions described in this Complaint constitute violations of RESPA, 12 U.S.C. § 1601, *et seq.*, and Regulation X, and 12 C.F.R. § 1024, *et seq*.

99. The QWR is a "qualified written request" as that term is defined in 12 U.S.C. 2605(e)(1)(B).

100. By failing to adequately respond to respond to the QWR, Defendant violated RESPA, including pursuant to 12 U.S.C. 2605(e)(2) and 12 C.F.R. 1024.36.

101. By failing to provide Plaintiff with the information he requested, Defendant violated Regulation X, including pursuant to 12 C.F.R. 1024.36.

102. By failing to conduct a reasonable investigation into the errors noted by Mr. O'Keeffe, Defendant violated Regulation X, including pursuant to 12 C.F.R. 1024.26(d).

103. By failing to adequately respond to Plaintiff's noted errors, Defendant violated Regulation X, including pursuant to 12 C.F.R. 1024.35(e).

104. By failing to correct the errors, Defendant violated Regulation X, including pursuant to 12 C.F.R. 1024.36.

105. Defendant regularly fails to evaluate and process its borrowers' loss mitigation applications in compliance with RESPA and Regulation X.

106. Defendant regularly fails to administer foreclosure lawsuits it brings against borrowers in compliance with RESPA and Regulation X.

107. Defendant has engaged in a pattern or practice of non-compliance with the requirements of RESPA and Regulation X.

108. As a result of Defendant's actions, Plaintiff incurred actual damages, including but not limited to, costs associated with preparing and sending the QWR and bringing this action, costs associated with defending the fraudulent foreclosure Complaint, improper fees assessed on the account, loss of credit, the reinstatement amount paid, and loss of employment opportunities.

109. As a result of Defendant's actions, Plaintiff suffers severe emotional distress, including anxiety, embarrassment, damage to reputation, stress, and sleepless nights.

110. Due to these violations, Defendant is liable to Plaintiff for actual damages to be determined at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

**VII. SECOND COUNT – RESPA 120 DAY VIOLATION**

111. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

112. Defendant's actions described in this Complaint constitute RESPA, 12 U.S.C. § 1601, *et seq.*, and Regulation X, and 12 C.F.R. § 1024.41.

113. Pursuant to 12 C.F.R. 1024.41(f), a servicer shall not make the first notice or filing for foreclosure unless the borrower's loan obligation is more than 120 days delinquent.

114. Mr. O'Keeffe's Mortgage Loan was never delinquent due to his compliance with payment obligations under the Loan Modification.

115. On or about October 13, 2022, Defendant, through the lender, filed its foreclosure Complaint against Mr. O'Keeffe.

116. By filing the Foreclosure, Defendant violated Regulation X, 12 C.F.R. § 1024.41(f)(1).

117. Defendant regularly fails to evaluate and process its borrowers' loss mitigation applications in compliance with RESPA and Regulation X.

118. Defendant regularly fails to administer foreclosure lawsuits it brings against borrowers in compliance with RESPA and Regulation X.

119. Defendant has engaged in a pattern or practice of non-compliance with the requirements of RESPA and Regulation X.

120. As a result of Defendant's actions, Plaintiff incurred actual damages, including but not limited to, costs associated bringing this action, costs associated with defending the fraudulent foreclosure Complaint, improper fees assessed on the account, loss of credit, the reinstatement amount paid, and loss of employment opportunities.

121. As a result of Defendant's actions, Plaintiff suffers severe emotional distress, including anxiety, embarrassment, damage to reputation, stress, and sleepless nights.

122. Due to these violations, Defendant is liable to Plaintiff for actual damages to be determined at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

123. Assume jurisdiction of this case;

124. Grant judgment in favor of Plaintiff on all counts and for the remedies sought in each count;

125. Award Plaintiff maximum damages on the Counts, including the maximum statutory damages available, the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

126. Award Plaintiff actual damages to be established at trial including pursuant to 12 U.S.C. § 2605(f);

127. Award Plaintiff statutory damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f);

128. Award Plaintiff additional damages and costs;

129. Issue a judicial determination of the rights and obligations of the parties;

130. Award such other relief as the court deems appropriate.

Dated this November 17, 2022.

Respectfully Submitted,
DOUCET GERLING CO., L.P.A.

*/s/ Andrew J. Gerling*
Andrew J. Gerling (0087605)
655 Metro Place South, Suite 600
Dublin, OH 43017
PH: (614) 221-9800
Fax: (818) 638-5548
andrew@doucet.law
*Attorney for Plaintiffs*

**JURY TRIAL DEMANDED**

The plaintiffs respectfully request a jury trial on all triable issues.

/s/ Andrew J. Gerling
Andrew J. Gerling (0087605)