# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JOSEPH O'KEEFFE,** *et al.,*

   **Plaintiffs,**

  **v.**

           **Case No. 2:22-cv-4070**
           **JUDGE EDMUND A. SARGUS, JR.**
           **Magistrate Judge Chelsey M. Vascura**

**CENLAR AGENCY, INC., a/k/a**
**Cenlar FSB,** *et al.,*

   **Defendants.**

## OPINION AND ORDER

This matter is before the Court on cross Motions for Summary Judgment from Plaintiffs Joseph and Allison O'Keeffe and Defendants Cenlar Agency, Inc. a/k/a Cenlar FSB and CitiMortgage, Inc.  (Pl. Mot., ECF No. 32; Def. Mot., ECF No. 33.)  The O'Keeffes opposed Defendants' Motion (Pl. Resp., ECF No. 34), and Defendants replied (Def. Reply, ECF No. 36).  Defendants opposed the O'Keeffes' Motion (Def. Resp., ECF No. 35) and the O'Keeffes replied (Pl. Reply, ECF No. 37).  For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** the O'Keeffes' Motion and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.

## BACKGROUND

### I. Factual Background

In 2003, Mr. O'Keeffe signed a mortgage to finance the purchase of his home at 5755 Covington Meadows Drive, Westerville, Ohio 43082.  (Cenlar Aff., ECF No. 33-1, PageID 908, ¶ 6.)  CitiMortgage holds the loan.  (*See id.* ¶ 7.)  Cenlar is the mortgage servicer.  (*Id.* ¶ 2.)

After the loan fell into default in 2006, Mr. O'Keeffe entered into a loan modification.

1

(*Id.* ¶ 8.) The modification set the principal balance at $237,292.19 and interest rate at 6%. (*Id.*)

In 2020, the O'Keeffes faced financial hardship due to the COVID-19 pandemic. (*Id.* ¶ 9.) Cenlar approved Mr. O'Keeffe's request for a forbearance. (*Id.* ¶ 9.) When Mr. O'Keeffe resumed payment one year later, the loan was twelve payments in arrears. (*Id.*) To mitigate losses and cure the default on the loan, Cenlar approved Mr. O'Keeffe for a VA disaster loan modification. (*Id.* ¶ 10.)

After Mr. O'Keeffe made three trial payments of $1,852.43, Cenlar prepared to offer a permanent modification agreement to cure the default. (*Id.* ¶ 11.) Cenlar calculated the proposed loan principal and payments using loan software. (*Id.*) Cenlar then used a vendor to draft the offer based on those terms. (*Id.* ¶ 12.) The offer set the principal balance at $213,369.76 and the interest rate at 3.65%. (*Id.* ¶ 13.) Cenlar sent the loan modification offer to Mr. O'Keeffe in July 2021. (*Id.* ¶ 12.) After receiving the loan documents, Mr. O'Keeffe asked Cenlar to correct the spelling of Mrs. O'Keeffe's legal name.[1] (*Id.* ¶ 14.)

In early August, Cenlar prepared a second offer with the correct spelling of Mrs. O'Keeffe's name. (*Id.* ¶ 17.) That offer set the principal balance at $120,108.42 and the interest rate at 3.5%. (*Id.* ¶ 16–17.) Cenlar attributes the change in principal balance and interest rate to its failure to catch a vendor's typographical error. (*Id.* ¶ 16.) After receiving the draft offer from the vendor, Cenlar double-checked the spelling of Mrs. O'Keeffe's name, but did not check the financial terms. (*Id.* ¶ 17.) Cenlar sent the offer with the $120,108.42 principal balance and 3.5% interest rate to the O'Keeffes. (*Id.*) Cenlar included a cover letter and a separate correction agreement. (*Id.* ¶¶ 18, 20.) The cover letter referenced the principal balance amount and interest

---

[1] Mrs. O'Keeffe is not a party to the loan; her signature was required to release her dower interest. (Loan, ECF No. 33-1, PageID 921; Signed and Recorded Loan Modification, ECF No. 33-2, PageID 1177.)

rate in the prior offer, but the correction agreement identified the principal balance as $120,108.42, the same amount as in the new offer.  (*Id.*; Correction Agreement, ECF No. 33-2, PageID 1157.)

Cenlar gave Mr. O'Keeffe until August 20, 2021 to accept the second offer.  (Cenlar Aff., ECF No. 33-1, PageID 911, ¶ 18.)  Mr. O'Keeffe did not do so before the deadline.  (*Id.* ¶ 19.)  On September 17, 2021, Cenlar formally revoked the offer and denied the loan modification.  (*Id.* ¶ 19; Revocation Letter, ECF No. 33-2, PageID 1142.)

On October 27, 2021, more than a month after Cenlar revoked the second offer, the O'Keeffes signed the proposed loan modification agreement that set the principal balance at $120,108.42 and the interest rate at 3.5%.  (Cenlar Aff., ECF No. 33-1, PageID 912, ¶ 20; Signed and Recorded Loan Modification, ECF No. 33-2, PageID 1168–78.)  The O'Keeffes sent the signed modification agreement to Cenlar.  (Cenlar Aff., ECF No. 33-1, PageID 912, ¶ 20.)  The O'Keeffes also signed and sent the correction agreement that had been included with Cenlar's second offer.  (*Id.*)

Around that time, Mr. O'Keeffe filed a complaint with the Consumer Finance Protection Bureau based on Cenlar's revocation of the second loan modification offer.  (*Id.* ¶ 21.)  The Bureau informed Cenlar of the complaint and forwarded it to Office of the Comptroller of the Currency ("OCC") for handling.  (*Id.*)

The day after receiving the consumer complaint, Cenlar decided to re-open the modification process.  (*Id.* ¶ 22.)  On November 17, 2021, Felize Jones, an authorized representative of CitiMortgage, counter-signed the loan modification agreement sent by the O'Keeffes with their signatures that set the principal balance at $120,108.42 and the interest rate at 3.5%.  (*Id.*; Signed and Recorded Loan Modification, ECF No. 33-2, PageID 1168–78.)

3

Cenlar sent the executed agreement for recording in Delaware County and sent a copy to the O'Keeffes.  (Cenlar Aff., ECF No. 33-1, PageID 913, ¶ 22.)  Days later, Cenlar responded to the OCC, informing the agency that it had allowed the loan modification to move forward.  (*Id.* ¶ 23; Resp. to OCC, ECF No. 33-2, PageID 1179.)

More than two months later, Cenlar mailed the O'Keeffes a new loan modification agreement that set the principal balance at $213,369.76 and the interest rate at 3.65%.  (*Id.* ¶ 26.) The O'Keeffes did not sign this modification.  (*Id.* ¶ 27.)  Cenlar notified Mr. O'Keeffe that it considered the loan to be in default and began rejecting Mr. O'Keeffe's payments.  (*Id.* ¶ 27–28.)

Through counsel, Mr. O'Keeffe sent a letter identified as a qualified written request under the Real Estate Settlement Procedures Act ("RESPA").  (Notice of Error ("NOE"), ECF No. 32-15, PageID 750.)  Mr. O'Keeffe's letter noted the difference in principal balance and interest rate between the signed and recorded loan modification and his account.  (*Id.*)  The letter identified three errors: (1) "Cenlar has failed to adjust the terms of the account to reflect the agreed upon Modification," (2) Cenlar refused to accept payments, and (3) Cenlar improperly assessed interest, fees, and charges.  (*Id.* at PageID 751.)  Cenlar responded that it did not consider the signed and recorded loan modification to be a valid agreement because it contained a discrepancy in financial terms.  (NOE Resp., ECF No. 32-16, PageID 757.)  "[F]or reasons unknown" to Cenlar, the response did not mention the difference in principal balance, only noting the difference in interest rate.  (*Id.*; Cenlar Aff., ECF No. 33-1, PageID 916, ¶ 32.)

Cenlar retained counsel to file a foreclosure action on behalf of CitiMortgage.  (Cenlar Aff., ECF No. 33-1, PageID 917, ¶ 33.)  CitiMortgage filed a complaint in foreclosure on October 13, 2022 in the Common Pleas Court of Delaware County.  Complaint, *CitiMortgage v.*

*O'Keeffe et al.*, Delaware C.P. No. 22 CV E 10 0523 (Ohio C.P. filed Oct. 13, 2022).[2] In its complaint, CitiMortgage stated that the "loan has since been modified" and that the loan modifications were "attached hereto, marked 'EXHIBITS B & C.'" *Id.* ¶ 2. Exhibit C is the signed and recorded loan modification with the principal balance set at $120,108.42 and interest rate at 3.5%. *Id.* at p. 16, Ex. C.

Four days later, Mr. O'Keeffe sent funds sufficient to satisfy the claimed delinquency. (Cenlar Aff., ECF No. 33-1, PageID 917, ¶ 33.) CitiMortgage moved to dismiss the foreclosure because the loan "ha[d] been brought current." Mot., *O'Keeffe*, Delaware C.P. No. 22 CV E 10 0523 (Ohio C.P. filed Oct. 24, 2022). The O'Keeffes filed a counterclaim for breach of contract. Counterclaim, *O'Keeffe*, Delaware C.P. No. 22 CV E 10 0523 (Ohio C.P. filed Oct. 25, 2022). The state court granted CitiMortgage's motion dismissing its complaint and subsequently allowed the O'Keeffes to dismiss their counterclaim without prejudice. Judgment Entry, *O'Keeffe*, Delaware C.P. No. 22 CV E 10 0523 (Ohio C.P. Oct. 25, 2022); Judgment Entry, *O'Keeffe*, Delaware C.P. No. 22 CV E 10 0523 (Ohio C.P. May 2, 2023). The O'Keeffes then brought this lawsuit.

## II.    Procedural Background

The O'Keeffes sued Cenlar for violating RESPA's 120-day rule and RESPA's requirements for responding to the O'Keeffes' Request for Information and Notice of Error, and sued CitiMortgage for breach of contract. (Am. Compl., ECF No. 8, PageID 201–04.) Defendants moved to dismiss. (ECF Nos. 21, 22.) The Court granted the motion to dismiss as to the Request for Information portion of the RESPA claims. (Op. & Order, ECF No. 38.)

---

[2] The Court may take judicial notice of the state court filings, not for the truth of the facts recited therein, but for the fact that CitiMortgage made this representation. *Wershe v. City of Detroit*, 112 F.4th 357, 373 (6th Cir. 2024).

The O'Keeffes moved for summary judgment as to liability for the remaining RESPA claims and as to liability and damages for the breach of contract claim. (Pl. Mot., ECF No. 32.) Defendants moved for summary judgment as to all claims. (Def. Mot., ECF No. 33.) The parties filed responses (Pl. Resp., ECF No. 34; Def. Resp., ECF No. 35.) and replies (Pl. Reply, ECF No. 37; Def. Reply, ECF No. 36). Both motions are ripe for this Court's review.

<strong>STANDARD OF REVIEW</strong>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the non-moving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party). "[W]here the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, [it] must show in opposition to the

6

motion for summary judgment that [it] can produce evidence which, if believed, will meet the higher standard." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir.1993) (quoting *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 944 (6th Cir. 1990)).

## ANALYSIS

### I.  Breach of Contract

The parties agree that Ohio law applies to the O'Keeffes' breach of contract claim.  To prevail in an action for breach of contract, the plaintiff must prove (1) a contract existed, (2) breach by the defendant, and (3) the plaintiff suffered damages resulting from the defendant's breach. *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018).

#### A.  Existence of an Enforceable Contract

Under Ohio law, the essential elements for formation of a contract include: 1) offer, 2) acceptance, 3) consideration, and 4) manifestation of mutual assent. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002).  "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id*.  The parties do not dispute that there was consideration.

Acting on behalf of CitiMortgage, Cenlar made two offers, neither of which were accepted by the O'Keeffes.  First, Cenlar sent a proposed loan modification agreement in July, but the O'Keeffes did not accept the offer because Mrs. O'Keeffe's name was not spelled correctly.  Cenlar then sent a second offer that spelled her name correctly, but also contained a lower principal and interest rate.  The O'Keeffes did not respond before that offer expired—and Cenlar subsequently revoked the offer.

More than a month later, the O'Keeffes signed the loan document contained in the revoked offer—the proposed loan modification agreement that set the principal balance at $120,108.42 and interest rate at 3.5%.  As that offer had been revoked, Mr. O'Keeffe could not

bind Defendants by accepting it. Nevertheless, the O'Keeffes sent the signed proposed agreement to Cenlar—this was an offer from Mr. O'Keeffe and a manifestation of Mr. O'Keeffe's intent to be bound.

CitiMortgage accepted the proposed agreement when it counter-signed and recorded the agreement in Delaware County. Through Cenlar, CitiMortgage sent the counter-signed agreement to the O'Keeffes, manifesting its assent.

Defendants argue that the signed and recorded loan modification is unenforceable because their unilateral mistake precluded a meeting of the minds. (Def. Resp., ECF No. 35, PageID 1372–73.) Under Ohio law, an otherwise valid contract may be rescinded based on a unilateral mistake. "[T]he party seeking rescission must show by clear and convincing evidence: (1) that it made a mistake at the time the contract was entered into, (2) that the mistake had a material effect on the agreed exchange of performances that was adverse to the mistaken party; and (3) that the other party knew or should have known of that mistake." *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, 750 F. Supp. 2d 839, 848 (N.D. Ohio 2010); *see also Faivre v. DEX Corp. Northeast*, 913 N.E.2d 1029, 1037 (Ohio 10th Dist. Ct. App. 2009).

Rescission is not available to a party whose gross negligence caused the unilateral mistake. *Gartrell v. Gartrell*, 908 N.E.2d 1019, 1023 (Ohio 5th Dist. Ct. App. 2009). Ohio law is unclear as to whether ordinary negligence can bar rescission. *Compare Marshall v. Beach*, 758 N.E.2d 247, 251 (Ohio 11th Dist. Ct. App. 2001) ("it is well established in Ohio that relief for a unilateral mistake of material fact *will not* be provided where such mistake is the result of the negligence of the party seeking relief") *with Gen. Tire, Inc. v. Mehlfeldt*, No. 19269, 1999 WL 420346, *7 (Ohio 9th Dist. Ct. App. June 23, 1999) (holding that "a mistaken party's ordinary negligence in either causing the mistake or failing to discover that mistake will not bar

8

him or her from obtaining rescission of a contract"). However, Ohio courts have held that rescission is not precluded where the mistaken party's negligence led to a mistake in the expression of a written contract and the other party knew of the mistake and took advantage of it. *Faivre*, 913 N.E.2d at 1039; *Liezert v. Liezert*, No. 14031, 1991 WL 199912, *2 (Ohio 9th Dist. Ct. App. Oct. 2, 1991).

Defendants assert that Cenlar's vendor made two typographical errors in the second offer: setting the principal balance at $120,108.42 instead of $213,369.76 and setting the interest rate at 3.5% instead of 3.625%. (Def. Mot., ECF No. 33, PageID 878.) But Cenlar revoked the second offer before Mr. O'Keeffe could accept it. The contract was not formed until nearly two months later when CitiMortgage signed, recorded, and returned the executed loan modification agreement sent by the O'Keeffes.

At that time, Defendants argue that CitiMortgage "mistakenly signed [the agreement] under the assumption that it only changed the misspelling of Mrs. O'Keeffe's name." (*Id.* at PageID 894.) That CitiMortgage failed to check the principal balance or interest rate before signing the contract does not warrant rescission. "[O]ne who signs a contract without first making a reasonable effort to learn what is in it may not in the absence of fraud, or mutual mistake, avoid the effect of such contract." *Indep. Directory Corp. v. Vandenbrock*, 94 N.E.2d 228, 230 (Ohio 2nd Dist. Ct. App. 1950) (citing *Baltimore & O.R. Co. v. Bing*, 105 N.E. 142, 142 (Ohio 1913)). Further, CitiMortgage then recorded the agreement in Delaware County. Months later, CitiMortgage identified the agreement as an in-effect loan modification in its state court complaint in foreclosure. These actions amount to gross negligence. *See Gartrell*, 908 N.E.2d at 1023 (finding gross negligence barred rescission where the mistaken party had made changes to a prior draft that were not implemented, but then "signed the agreement without

further review").

Defendants alternatively argue that the O'Keeffes failed to comply with the parallel correction agreement when they did not sign the subsequent modification sent two months after CitiMortgage counter-signed the signed and recorded modification.  (Def. Reply, ECF No. 36, PageID 1388–89.)  But the O'Keeffes were only required to comply with Cenlar's request if a document "inaccurately reflects the true and correct terms and conditions of the Loan." (Correction Agreement, ECF No. 33-2, PageID 1157.)  As discussed above, Defendants cannot show that the principal balance and interest rate in the signed and recorded loan modification did not reflect the terms of the agreement.  Moreover, the correction agreement itself identifies the principal balance owed as $120,108.42—the same amount as in the signed and recorded loan modification.

Defendants point to no evidence—let alone show that they can establish by clear and convincing evidence—that there was a unilateral mistake at the time of the contract's execution that warrants rescission.

### B.  Breach and Damages

Under Ohio law, a party breaches a contract when it "fail[s] without legal excuse to perform any promise which forms a whole or part of a contract, including the refusal of [the] party to recognize the existence of the contract[.]"  *Nat'l City Bank of Cleveland v. Erskine & Sons*, 110 N.E.2d 598, 598 (Ohio 1953).

Defendants do not dispute that Cenlar began rejecting payments and that Cenlar informed the O'Keeffes that it would "not be honoring the loan modification."  (Def. Mot., ECF No. 33, PageID 887; Letter, ECF No. 33-2, PageID 1211.)  As the signed and recorded loan modification is a valid and enforceable contract, these actions constitute breach.

Defendants' arguments hinge on the validity and enforceability of the loan modification.

10

Defendants make no argument that the O'Keeffes did not suffer damages from the breach.

***

For the reasons above, summary judgment is **GRANTED** to the O'Keeffes as to CitiMortgage's liability for breach of contract.

## II. Violation of RESPA's 120 Day Rule

Under RESPA, a loan servicer shall not initiate a foreclosure process unless the mortgage loan obligation is more than 120 days delinquent. 12 C.F.R. § 1024.41(f)(i). Defendants argue that "the Loan remained in default due to the failure of the parties to reach an enforceable agreement." (Def. Mot., ECF No. 33, PageID 896.) As discussed above, the loan modification is valid and enforceable, so the loan was not in default when CitiMortgage initiated the foreclosure. Therefore, summary judgment is **GRANTED** to the O'Keeffes as to Cenlar's liability for violating RESPA's 120-day rule.

## III. Violation RESPA's Response Requirements as to the Notice of Error

Under RESPA, a loan servicer is required to respond to "qualified written requests" from the borrower. 12 U.S.C. § 2605(e)(1)(A). A Notice of Error ("NOE") is one form of qualified written request. *See* 12 U.S.C. § 2605(e)(1)(B). To qualify as an NOE, a borrower must provide in writing: (1) their name and account, (2) sufficient detail to make the loan servicer aware of the alleged error. *Id*. A loan servicer must respond to an NOE by (1) by making corrections to the account or (2) conducting an investigation and clarifying why the servicer has determined the account is already correct. 12 U.S.C. § 2605(e)(2)(A–B). If the servicer determines there has been no error, the servicer's response must include "a statement that the servicer has determined that no error occurred," and "a statement of the reason or reasons for this determination." 12 C.F.R. § 1024.35(e)(1)(i).

The O'Keeffes argue that Cenlar's response was insufficient because Cenlar failed to

11

mention the difference in principal balance. But the O'Keeffes only raised the balance difference by implication in the section of their letter that identifies Cenlar's errors. (NOE, ECF No. 32-15, PageID 751 (identifying the error relating to the financial terms as "Cenlar has failed to adjust the terms of the account to reflect the agreed upon Modification").) Cenlar's response does explain that its investigation determined that the account did not reflect the signed and recorded modification because, in Cenlar's view, the O'Keeffes were required to sign the subsequent offer with the higher interest rate for any modification to take effect. (NOE Resp., ECF No. 32-16, PageID 757.) This response meets RESPA's requirements. Therefore, summary judgment is **GRANTED** to Defendants as to the RESPA Notice of Error claim.

## IV.    Damages

The O'Keeffes move for summary judgment only as to liability for their RESPA claims, but as to liability and damages for their breach of contract claim. (Pl. Mot., ECF No. 32, PageID 603–04.) Defendants do not respond to the O'Keeffes' damages arguments in their opposing brief and Plaintiffs do not revisit in their reply. Although the Court has decided liability for the breach of contract claim, it will not decide the damages issue on such scant briefing.

## CONCLUSION

For the stated reasons, the Court **GRANTS IN PART** the O'Keeffes' Motion for Summary Judgment as to liability for their RESPA 120-day rule claim and their breach of contract claim and **DENIES IN PART** the O'Keeffes' Motion as to their RESPA Notice of Error claim and as to damages for the breach of contract claim. (Pl. Mot., ECF No. 32.) The Court **GRANTS IN PART** Defendants' Motion for Summary Judgment as to the RESPA Notice of Error claim and **DENIES IN PART** Defendants' Motion as to all other claims. (Def. Mot., ECF No. 33.)

The parties are **ORDERED** to meet and confer and advise the Court by joint notice

within **21 days** whether the Court should schedule a trial on damages or if damages should be determined on written briefs, supported by admissible evidence.  If the parties suggest briefing in lieu of a trial, they should propose a briefing schedule for the Court's consideration.

This case remains open.

**IT IS SO ORDERED.**

**9/23/2024**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                             **EDMUND A. SARGUS, JR.**
                                                          **UNITED STATES DISTRICT JUDGE**