## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JOSEPH O'KEEFFE,** *et al.*,

      **Plaintiffs,**

    v.

**CENLAR AGENCY, INC., a/k/a Cenlar FSB,** *et al.*,

      **Defendants.**

**Case No. 2:22-cv-4070**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

This matter is before the Court on a Motion for Damages filed by Plaintiffs Joseph and Alison O'Keeffe. (ECF No. 50.) Defendants Cenlar Agency, Inc. a/k/a Cenlar FSB and CitiMortgage, Inc. opposed the Motion (ECF No. 54), and the O'Keeffes replied (ECF No. 57). For the reasons stated in this Opinion and Order, the Motion for Damages is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This case arises from a mortgage loan and mortgage Loan Modification Agreement signed by Mr. O'Keeffe, and the Defendants, to finance the purchase of his home in Westerville, Ohio. (ECF No. 44, PageID 1508.) CitiMortgage holds the loan, and Cenlar is the mortgage servicer. (*Id.*)

### I.    Factual Background

After the O'Keeffes faced financial hardship during the COVID-19 pandemic, Cenlar worked with a vendor to draft a proposed modification agreement to mitigate losses and cure the default on the mortgage loan. (*Id.* PageID 1509.) Cenlar sent the O'Keeffes an offer with a principal balance on the mortgage loan of $213,369.76 and an interest rate of 3.65%. (*Id.*) Cenlar

sent the loan modification offer to Mr. O'Keeffe in July 2021, but the loan modification incorrectly spelled Mrs. O'Keeffe's name. (*Id*.)

In early August, Cenlar sent a second offer with the correct spelling of Mrs. O'Keeffe's name. (*Id*.) But that offer, in error, set the principal balance at $120,108.42 and the interest rate at 3.5%. (*Id*.) Cenlar attributed the difference in principal balance and interest rate to its failure to catch a vendor's typographical error. (*Id*.)

Cenlar gave Mr. O'Keeffe until August 20, 2021 to accept the second offer. (*Id.* PageID 1510.) When Mr. O'Keeffe did not accept the offer by the deadline, Cenlar formally revoked it and denied the loan modification. (*Id*.) One month later, Mr. O'Keeffe signed and returned the proposed loan modification agreement that set the principal balance at $120,108.42 and the interest rate at 3.5%. (*Id*.) On November 17, 2021, CitiMortgage counter-signed and recorded the proposed loan modification agreement sent by the O'Keeffes setting the principal balance at $120,108.42 and the interest rate at 3.5%. (*Id*. PageID 1511; *see also* ECF No. 33-2, PageID 1168–78.)

Realizing its error, Cenlar mailed the O'Keeffes a new loan modification agreement two months later, with a corrected principal balance of $213,369.76 and an interest rate at 3.65%. (*Id*.) The O'Keeffes did not sign this modification. (*Id*.) Cenlar notified Mr. O'Keeffe that it considered the loan to be in default and began rejecting Mr. O'Keeffe's payments. (*Id*.)

Through counsel, Mr. O'Keeffe sent a written request under the Real Estate Settlement Procedures Act ("RESPA"). (*Id*.) The letter noted the difference in principal balance and interest rate between the signed and recorded loan modification and the O'Keeffes' account. (*Id*.) The letter identified three errors: (1) "Cenlar has failed to adjust the terms of the account to reflect the agreed upon Modification," (2) Cenlar refused to accept payments, and (3) Cenlar improperly assessed interest, fees, and charges. (*Id*.)

Cenlar responded that it did not consider the signed and recorded loan modification to be

2

a valid agreement because it contained a discrepancy in financial terms. (*Id.*) But "for reasons unknown" to Cenlar, the response did not mention the difference in principal balance, only noting the difference in interest rate. (*Id.*)

## II. Procedural Background

CitiMortgage filed a complaint in foreclosure on October 13, 2022 in the Common Pleas Court of Delaware County. (*Id.*) After Mr. O'Keeffe satisfied the claimed delinquency, CitiMortgage moved to dismiss the case. (*Id.* PageID 1512.) The state court granted the motion and dismissed the complaint. (*Id.*) The O'Keeffes then sued CitiMortgage for breach of contract and sued Cenlar for violating several RESPA requirements. (*See* ECF No. 8.)

On cross-motions for summary judgment (ECF Nos. 32, 33), the Court awarded summary judgment to the O'Keeffes on their breach of contract claim against CitiMortgage and on their claim against Cenlar for violating RESPA's rule that a loan servicer should not initiate a foreclosure unless a borrower is more than 120 days delinquent. (ECF No. 44, PageID 1518.) The Court however granted Defendants' motion for summary judgment on the RESPA Notice of Error claim. (*Id.* PageID 1519; *see also* 12 U.S.C. 2605(e)(1)(A).)

Since the parties did not brief the issue of damages, the Court ordered them to do so. (ECF No. 44, PageID 1519; *see also* ECF No. 46 (adopting the parties' proposed briefing schedule).) The O'Keeffes filed their Motion for Damages requesting $476,414.76 in damages, including statutory damages and $355,500 in emotional distress damages. (ECF No. 50, PageID 1532.) Defendants oppose the Motion and counter that the O'Keeffes are entitled to only $61,745.07 in damages, not to include statutory or emotional distress damages. (ECF No. 54.) The O'Keeffes replied. (ECF No. 57.) This matter is ripe for the Court's review.

3

## ANALYSIS

The Court finds that Defendants' damages calculation is correct. Therefore, the Court awards the O'Keeffes damages for the breach of contract and attorneys' fees in connection with the RESPA violation. The O'Keeffes, however, fail to establish that they are entitled to statutory or emotional distress damages for the RESPA violation.

### I. The O'Keeffes are entitled to damages for the breach of contract.

Under Ohio law, "[t]he damages awarded for a breach of contract should place the injured party in as good a position as he would have been but for the breach." *Walters v. Goddard*, 127 N.E.3d 322, 326 (11th Dist. Ohio Ct. App. 2018) (citation omitted). Put differently, damages "are those which are the natural or probable consequences of the breach" or those "resulting from the breach that were within the contemplation of both parties at the time of making the contract." *KN Excavation LLC v. Rockmill Brewery LLC*, 196 N.E.3d 916, 923 (5th Dist. Ohio Ct. App. 2022) (citation omitted). The party seeking damages—here, the O'Keeffes—"must present sufficient evidence to show entitlement to damages in an amount ascertainable with reasonable certainty." *Nat'l Contracting Grp., Ltd. v. P&S Hotel Grp., Ltd.*, 177 N.E.3d 308, 313 (10th Dist. Ohio Ct. App. 2021) (citation omitted).

The parties agree that the O'Keeffes are entitled to $47,403.64 for CitiMortgage's breach of contract. (ECF No. 50, PageID 1533; *see also* ECF No. 54, PageID 1617.) The O'Keeffes tendered this amount to satisfy the claimed delinquency and stop the foreclosure action. If CitiMortgage abided by the Loan Modification, the O'Keeffes would not have been required to pay this amount to stop the foreclosure. Therefore, the return of the $47,403.64 puts the O'Keeffes in the same position they would have been in but for the breach.

Defendants also do not dispute that the O'Keeffes are entitled to any overpayments made on the mortgage loan, but they dispute the amount the O'Keeffes claim to have overpaid. (*Compare*

ECF No. 50, PageID 1534 and ECF No. 57, PageID 1694–95 *with* ECF No. 54, PageID 1618–19.) At first the O'Keeffes asserted that they paid $38,549.28 in principal and interest. (ECF No. 50, PageID 1534.) To support this calculation, Mr. O'Keeffe attached an online amortization calculator. (*See* ECF No. 50-7.) But the online amortization schedule does not demonstrate the amount of principal and interest actually paid and is not otherwise supported by payment records. (*See id.*) Defendants calculate the O'Keeffes' amount of principal and interest paid as $28,994.50. (ECF No. 54, PageID 1618.) In their reply, Plaintiffs do not contest Defendants' calculation, effectively conceding its accuracy. (*See* ECF No. 57, PageID 1695.) Therefore, the Court will use the $28,994.50 calculation of principal and interest paid by the O'Keeffes to calculate damages.

If Defendants had followed the Loan Modification, the O'Keeffes would have made 37 monthly payments of $539.34 from November 1, 2021 and through November 2024, for a total of $19,955.58. (ECF No. 50, PageID 1534; *see also* ECF No. 54, PageID 1618.) Instead, the O'Keeffes paid $28,994.50 in principal and interest. (*Id.*) Thus, they are entitled to the difference between $28,994.50 (the amount they paid) and $19,955.58 (the amount they should have paid under the Loan Modification), equaling $9,038.92 in overpayments on the mortgage loan. (ECF No. 54, PageID 1618–19; *see also* ECF No. 56, PageID 1664–65, 68–89.) In addition to the $47,403.64 discussed above, the total damages award for the breach of contract is $56,442.56, says Defendants. (ECF No. 56, PageID 1664–65, ¶ 11.) The Court agrees.

The O'Keeffes also contend that they are "entitled to the difference between the current mortgage balance of $160,020.02 and what the mortgage should be – i.e., $112,944.45." (ECF No. 50, PageID 1534.) So they request an additional $47,075.57 in damages for CitiMortgage's breach of contract. (*Id.*) But the O'Keeffes point to no case law supporting this position nor articulate how these additional damages would place them in as good of a position had the breach not occurred. *Walters*, 127 N.E.3d at 326. In fact, as Defendants point out, enforcing the Loan Modification

5

"will provide an ongoing future benefit to the [O'Keeffes] of a savings of $174,206.82 in principal and interest, above and beyond the liquidated damages awarded in this lawsuit." (ECF No. 54, PageID 1619 (citing ECF No. 56, PageID 1665, ¶ 15).) Therefore, the O'Keeffes have not presented sufficient evidence to show entitlement to the additional damages, beyond those awarded by the Court above.

### II. The O'Keeffes have not established that they are entitled to statutory or emotional distress damages for the RESPA violation.

Under RESPA, a loan servicer shall not initiate a foreclosure process unless the mortgage loan obligation is more than 120 days delinquent. 12 C.F.R. § 1024.24(f)(1)(i). The Court found that because the Loan Modification is valid and enforceable, the O'Keeffes' loan was not in default when CitiMortgage initiated the foreclosure, and thus CitiMortgage violated the 120-day rule under RESPA. (ECF No. 44, PageID 1518.)

RESPA provides three applicable avenues to recover damages: (1) "actual damages to the borrower" from the loan servicer's failure to abide by RESPA's requirements; (2) "additional damages, as the court may allow, in a case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000"; and (3) "the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances." 12 U.S.C. § 2605(f)(1)–(3).

The O'Keeffes argue they are entitled to statutory damages of $2,000 plus emotional distress damages of $355,500.00 and attorneys' fees of $5,302.51. (ECF No. 50, PageID 1532, 39–40.) Defendants do not contest the O'Keeffes' request for $5,302.51 in attorneys' fees expended in defending against the wrongful foreclosure action. (ECF No. 54, PageID 1621; *see also* ECF No. 50, PageID 1539.) So the Court awards the O'Keeffes $5,302.51 in attorneys' fees. *See* 12

U.S.C. § 2605(f)(3). Defendants do however contest the O'Keeffes' additional request for damages.

### A. The O'Keeffes are not entitled to statutory damages.

The O'Keeffes assert they are entitled to $2,000 in statutory damages for Defendants' pattern or practice of RESPA violations. (*See* ECF No. 50, PageID 1539–40.) To show a pattern or practice of noncompliance, the plaintiff "must show that noncompliance with the statute 'was the company's standard operating procedure—the regular rather than the unusual practice.'" *Lewis v. PNC Bank, N.A.*, No. 3:17-cv-220, 2018 U.S. Dist. LEXIS 201997, at *21 (S.D. Ohio Nov. 29, 2018) (Rose, J.) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). This requires the plaintiff to allege RESPA violations "with respect to other borrowers." *Id.* (quoting *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013)).

The O'Keeffes do not argue that other borrowers experienced similar violations of RESPA's 120-day rule. Instead, they assert that requiring them to allege violations with respect to other borrowers creates "an insurmountable burden" due to the confidential nature and their relative access to borrower information. (ECF No. 57, PageID 1700.) But they provide neither supporting case law nor an alternative standard for the Court's consideration. Since the case law requires allegations that Defendants committed similar violations, and the O'Keeffes allege no such violations, they fail to show that noncompliance was more than an unusual occurrence. Indeed, the facts here are particularly unique. The O'Keeffes are not entitled to statutory damages based on Defendants' pattern or practice of noncompliance with RESPA.

### B. The O'Keeffes are not entitled to emotional damages under RESPA.

Next, the O'Keeffes argue that they are entitled to emotional distress damages of $355,500. (ECF No. 50, PageID 1535–39.) Although the Sixth Circuit has held that actual damages under RESPA may include emotional damages, *Houston v. U.S. Bank Home Mortg. Wisc. Serv.*, 505 F.

7

App'x 543, 548 (6th Cir. 2012), "a plaintiff may not rely on a threadbare claim for emotional damages without any detail as to the symptoms or severity of the emotional distress or how Defendant allegedly caused these damages." *West-Bowlson v. Sun W. Mortg. Co.*, No. 23-cv-12105, 2025 U.S. Dist. LEXIS 97612, at *7 (E.D. Mich. Apr. 29, 2025) (internal quotations omitted). To recover emotional damages, the plaintiff "must present evidence to establish a causal link between the servicer's noncompliance and the claimed damages." *Schoen v. Bank of Am., N.A.*, No. 2:17-cv-648, 2019 U.S. Dist. LEXIS 23460, at *16 (S.D. Ohio Feb. 13, 2019) (Jolson, M.J.) (citation omitted). "Recoverable emotional distress requires a highly unpleasant mental reaction" and the "law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Tsakanikas v. JP Morgan Chase Bank N.A.*, No. 2:11-CV-888, 2012 U.S. Dist. LEXIS 172058, at *12 (S.D. Ohio Dec. 4, 2012) (quoting *Eichholz v. Wells Fargo Bank, N.A.*, No. 10-cv-13622, 2011 U.S. Dist. LEXIS 128455, at *17 (E.D. Mich. Nov. 7, 2011)) (explaining that "becoming anxious" does not constitute emotional distress).

Mr. O'Keeffe and Mrs. O'Keeffe each describe, in detail, the emotional toll of this ordeal. (*See* ECF Nos. 50-1 (Joseph O'Keeffe Declaration); 50-2 (Alison O'Keeffe Declaration).) They feared losing their home because of the foreclosure and felt "extreme stress and anxiety" which strained their marriage. (ECF No. 50, PageID 1536.) Mr. O'Keeffe was concerned that the foreclosure would cause him to lose his job in the mortgage industry. (*Id.* PageID 1537–38.) And the foreclosure decreased his credit score causing him to incur other expenses. (*Id.*) Therefore, the O'Keeffes assert that they are entitled to $500.00 per day from October 13, 2022 (the date the foreclosure action was filed) until September 23, 2024 (the date this Court issued an Opinion and Order holding the foreclosure action violated RESPA).

To support the $500.00 per day in damages, the O'Keeffes cite *Lucero v. Cenlar FSB*. (ECF No. 50, PageID 1535 (citing *Lucero v. Cenlar FSB*, No. C13-0602RSL, 2016 U.S. Dist.

8

LEXIS 10430, at *13 (W.D. Wash. Jan. 28, 2016).) There, the district court determined that the loan servicer violated RESPA by failing to adequately respond to the borrower's request for information. *Id.* The court awarded emotional distress damages in an amount of $500.00 per day for the time between the loan servicer's deadline to respond (March 25, 2014) and the date when the late response was sent (June 18, 2014). *Id.* Despite the plaintiff's request, the Court did not award emotional damages from the date of the violation until the court found the loan servicer liable at trial. *Id.*

*Lucero* is distinguishable. The plaintiff suffered a nervous breakdown, uncontrollable emotions, and a lack of focus which rendered her unemployable for several months. *Lucero*, 2016 U.S. Dist. LEXIS 10430, at *10. Although Mr. O'Keeffe feared his reputation would be harmed, and that he could lose his job, he does not argue he in fact was unemployed because of his emotional distress. (*See* ECF No. 50-1.) In *Lucero*, the plaintiff's emotional distress was both more severe and better substantiated, justifying the $500 per day emotional damages award.

*Lucero* also undercuts the proposed length of the violation suggested by the O'Keeffes. There, the district court awarded emotional damages only for the days when the loan servicer was in violation of RESPA—i.e., only after the Court issued a decision determining that the loan servicer was liable. *See Lucero*, 2016 U.S. Dist. LEXIS 10430, at *13. Here, Defendants violated the 120-day rule when they improperly filed a foreclosure action on October 13, 2022, even though the O'Keeffes' loan was not in default. (*See* ECF No. 44, PageID 1512.) The violation stopped when the foreclosure action was dismissed 12 days later, on October 25, 2022. (*Id.*) Therefore, the O'Keeffes could only recover for those 12 days. Any emotional harm suffered after the foreclosure action was dismissed is more attributable to Defendants' failure to abide by the terms of the Loan Modification, not for violating the 120-day rule.

9

Most importantly, although the O'Keeffes describe a "range of intense, negative emotions," those emotions do not rise to the level of actionable emotional distress recognized by courts within the Sixth Circuit. *Tsakanikas v. JP Morgan Chase Bank N.A.*, No. 2:11-CV-888, 2012 U.S. Dist. LEXIS 172058, at *12 (S.D. Ohio Dec. 4, 2012) (quoting *Eichholz v. Wells Fargo Bank, N.A.*, No. 10-cv-13622, 2011 U.S. Dist. LEXIS 128455, at *17 (E.D. Mich. Nov. 7, 2011)). "Recoverable emotional distress requires a highly unpleasant mental reaction" and the "law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* (explaining that "becoming anxious" is not emotional distress).

While the Court is sympathetic to the energy and effort expended halting the foreclosure and litigating this case, the emotional distress described is not the type of distress so severe that no reasonable person could be expected to endure it. *Eichholz*, 2011 U.S. Dist. LEXIS 128455, at *17. The Court finds that the O'Keeffes failed to put forth sufficient evidence of emotional distress to warrant damages beyond attorneys' fees for the RESPA violation.

As a final point, the O'Keeffes are not left without relief. Defendants will return the $47,403.64 payment made to stop the foreclosure proceedings, plus the overpayments made on the incorrect principal amount, along with attorneys' fees incurred contesting the foreclosure. *See supra*. The O'Keeffes will enjoy continued savings throughout the life of the mortgage loan under the significantly lower principal balance and interest rate of the Loan Modification. (*See* ECF No. 54, PageID 1619 (estimating that they will save $174,206.82 over the life of the loan).)

## CONCLUSION

For the reasons above, the Motion for Damages is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 50.) The O'Keeffes are entitled to $56,442.56 in damages on their breach of contract claim and $5,302.51 in attorneys' fees for the RESPA violation, for a total of **$61,745.07**

in damages. The O'Keeffes, however, have not established that they are entitled to statutory or emotional harm damages for the RESPA violation.

The Clerk is **DIRECTED** to enter judgment and **CLOSE** this case on the Court's docket.

**IT IS SO ORDERED.**

**9/9/2025**                                          **s/Edmund A. Sargus, Jr.**
**DATE**                                              **EDMUND A. SARGUS, JR.**
                                                       **UNITED STATES DISTRICT JUDGE**